Thank you very much. The next case is number 07-1523, Fargo Electronics, Incorporated, against Iverson, New York. Good morning. Will you please record? Claim 8 of the 519 patent is specific to the positioning of the identifier edition for letting an ID card printer know what type of ribbon is in the printer. And you still contend that there is no mistake? Yes, Your Honor, that's our contention. As Fargo's inventor told the PTO, the supports are arranged to provide a home positioning... How can you say there's no error? I don't care what the inventor said to the PTO. Let's look at the claim. That's where we figure out if there's an error or not. And you're missing a noun. I mean, I just don't see how when you're missing a noun, there can't be an error. There's no noun. The second supports other than the what? Your Honor, I would agree... Other than the being oriented? I mean, that doesn't make sense. There are a number of ways to look at this. First of all, there's no question that this is less than ideal under Bancor and Exxon and that entire line of cases. And I think the point here is there are really three avenues to look at this. Number one is, is this claim amenable to construction, however difficult that may be, which is Bancor and Exxon. Number two is, is this claim insolubly ambiguous and therefore indefinite, which is the data mize and the Allen Engineering case that they cited, which do not talk about it in the context of a mistake. The third, which I think you're getting to, Judge Moore, is the mistake cases where a patentee comes in and you see, in those cases, the patentee says, there's a mistake in my patent and I'd like the court to fix it. That's not what's going on here. We do not believe this is a mistake. It's awkward. But it doesn't take no noun. How... But do you agree that under the cases you cited, if there's more than one potential or reasonable interpretation of this, what you said, less than ideal language, then you don't get the benefit of that? Well, that would be the mistake cases where someone has come in. In the cases I believe you're referring to, Judge Prost, Noble, for example, and MicroStrategy and others, the patentee has come in and agreed that there are multiple different ways to read that claim and correct it. We don't think that's the case here. But if we conclude that there's more than one way to carry this claim, then do you agree that you lose? If your Honor can look at this claim and thinks there are two equally, you know, different constructions for those or corrections, as it's sometimes phrased... Two equally? What's the standard? That it's insolubly ambiguous is the standard here, that you're unable to construe this claim... Because there are two reasonable applications and these two different reasonable applications? Well, it has to be... I don't think it's just that there are two reasonable ways to read it because the claim construction cases, for example, Exxon and Bancor say that it doesn't... you know, reasonable people can disagree about the meaning of a claim. So there could be... what's happening... They could be out of business with that. Well, what's happening here, for example, is every time we try to describe our claim construction, you know, they're going to have a board with five different options on it, and they're saying, you know, every time we open our mouths, they're going to try and cut and paste it into the claim. Now, as your Honor's well... But isn't... aren't all these cases, Exxon and the others, where there's no clear and unmistakable sort of error in the claim? I agree. I mean, gosh, in every single case, the parties dispute claim construction. And, boy, if they... if there weren't two reasonable sides, we wouldn't have such a high reversal rate. Sure. So it seems to me that the Novo cases and Judge Probst's continuing questions isn't the standard reasonable... whether or not the correction is subject to reasonable debate is because, as you can see, this panel is focusing on the notion that you're missing out. Well... And so we can't just overlook that. Your Honor, I understand that, but... So isn't the standard under Novo, once we determine that there's something missing here, there's an error, the claim refers to... it's dependent on Claim 35, and there's no Claim 35. Sure. Well, there's no down here that tells us what the other is. Well, first of all, again, this... if this does go under Novo, then you're talking about the Novo standard, and I don't dispute what the Novo standard is. There have been a number of cases cited, Southwest Software, where there was an appendix missing, the claim you're referring to, where there was a dependent claim which referred to a non-existent claim, I believe that was Hoffer, Group 1, where 24 words were missing. But in those cases... And aren't there some words missing here? Not necessarily. I mean, look at prosecution history. It seems clear that you all intended to put some other language in, it just didn't. Well, Your Honor, what's happening is a lot of people here are trying to get into the mind of the inventor, okay, and they're taking three words in isolation from the entire claim. Is the mind of the inventor the relevant text here? I agree, it's not. I'm saying that's what's happening here is the defendants are trying to get into the mind of the inventor and saying this is a mistake. Now, this language, I agree, it's less than ideal, it's awkward, but our... Your Honor, the thing is, the examiner 10 years ago... Are you saying that someone intentionally wrote it? I mean, that it's not clearly missing something? Well, again, I can't get into the mind of the inventor whether the inventor intended this language. You don't just do claims according to the mind of the inventor. You're a reasonably skilled artist, and I'm not saying you are, but suppose you are. Maybe you are. But when you look at this claim, you don't think immediately, scratch your head, what are they talking about? There's a word missing or there's some extra words that weren't extracted. You don't think that. I may scratch my head and say this is awkward, but I believe it can be construed in that the inventor should not be deprived of the benefit of the invention. And let me point out, Your Honor, that this claim issued in 1998. It was seven and a half years before anyone said there was an error in it. You made two... Yeah, but did you assert it against anyone? Well, first of all, very good point. Did you assert it against these people? Yeah, and as a matter of fact, the record shows that in 2003, the summer of 2003, they started looking at this claim to figure out how to design around it. The lawsuit was filed in February of 2004, seven months later, and it wasn't until July of 2005 that they raised the mistake. So they knew about this for two years. They were in litigation for a year and a half and did not say there was a mistake in this claim. Well, you're not suggesting that it's Barb, right? Because that could have been a matter of strategy, right? They could have known all along it was a mistake and just revealed that to you at the right time. I mean, don't litigants typically in the course of litigation collect their best arguments and only reveal them at the last minute for strategic purposes? I agree with that position, Your Honor. However, in this case, that would be kind of odd because what they did here, we moved for a preliminary injunction, okay? They did not oppose our preliminary injunction by saying you don't have a likelihood of success. Are you suggesting it's Waver, that's all? I'm not saying Waver. Okay. But I'm saying that for purposes of indefiniteness, they spent two years looking at this claim, people of ordinary skill in the art as well as their lawyers, as they were looking to, for example, to contract with who to create their ribbons for sale. They talked to a number of people. The record showed in depositions, for example, and they did not come back and say, gosh, our position is that this is indefinite. As a matter of fact, they took their 81733G ribbon off the market, and as I believe it's 856, the judge refers to this in his order, they agreed to a preliminary injunction on that ribbon. So they were able to read this claim for the first year and a half of litigation to the point of saying, gosh, we better take our ribbon off the market. Counsel, I don't think that we can extrapolate from those actions as to what they were thinking. Perhaps they were thinking we can settle this case, and we can go away cheaply. I mean, there's a million possible scenarios you and I could sit here and come up with, and I'm having trouble using the fact that they didn't introduce this argument to you at a sooner point as the basis for concluding where you want to. Below, didn't you introduce to the district court or your client two separate potential constructions, one of which removed the words other than and not, and one of which added the words first support? Isn't that sort of identically what you proposed below? That, oh, there's either two ways to read this. They both, according to you, result in the same general construction, but one involved necessarily putting words in and one involved necessarily taking them out. That's not quite correct, Your Honor. We did not ask the court to add or subtract words from the claim. What happened was, first of all, the plain construction proceedings here were short-circuited because they filed at that point their motion for summary judgment on indefiniteness. So what it became instead of plain construction was an indefiniteness argument on their motion. And what we had proposed for purposes of plain construction was, and I'm reading from A1883, which is our opposition to their motion for summary judgment, we said, Fargo suggests that the phrase can be construed as the supports other than the first support or, perhaps even more simply, the second supports. So we were discussing in our brief the plain constructions, and what they did, as they're going to do here today, is they came in with a board and they said, well, that means we're going to paste these words here and delete these words there to present to the court our version of your plain construction as a correction. We don't agree with that. Unfortunately, the court did agree with that below and said the claim is indefinite and wrote in their opinion that what we're talking about is adding or deleting words. We don't believe that. We've never taken that position. We don't want to do that. But I don't understand just what your argument is, because the argument that I haven't seen anywhere in any of your documents is that when you read the claim in light of the specification, it's crystal clear what it covers. You're not doing that. You're saying that the claim is clear on its face and you don't have to read it in light of the specification. At least that's what I read from your briefs, and I wonder about that. Is that an accurate representation of your position on this appeal? No, Your Honor, that's not our position. And what I would hope has come across in our briefs would be that we want a full, proper claim construction here with the claim read in light of the specification and also the prosecution history. And in that respect, for example, starting with what the inventor actually said to the PTO when they made this amendment, the inventor said, quote, supports are arranged to provide a home position and additional positions with removable and replaceable indicators to permit mounting at least one addition to a different position for different ribbons. Figure 6 of the patent, which we would like the court to look at as well, shows, and that's at page A89, figure 6 shows what the home position is. It's numbered 73. There's two pins in it. Well, I agree with that. And that I would have thought would have been a direct approach. But again, reading the briefs, it seems to me you're saying that the claim is clear. And don't bother me with the specification. Absolutely not, Your Honor. That was not our intention. Our intention is to look at this as a full and proper claim construction argument. Unfortunately, one of the things we're saddened with in the brief is dealing with the mistake position that the district court took below and that they're taking here today. But no, we think that this claim is... Well, let's just say that it looks to me like a mistake. Let's just say it looks to me that there is something or other missing. And I don't know what the claim means unless I go back to the specification. Once I go back to the specification, I know what it means. There's only one possible meaning, the one that you're proposing. However, on its face, it's very hard to say that the claim is clear. I know you've said so many times, but there is a problem, and of course the problem is the decision. The trial court as well had that same problem. And I'm trying to focus on how you think to get around it. Well, I think to get around the problem, first of all, and to go to Judge Moore's point, this, and what you're saying, Judge Newman, unquestionably this is awkward language. Other than the being. It's an awkward way to phrase things. But, for example... It's not awkward, it's not. I would concede that, Your Honor. But to go to Judge Moore's point, there isn't even necessarily... It's also incomprehensible. Well, there isn't necessarily a word missing. I mean, for example, being can be understood as a noun. I mean, somehow people have been reading this claim for ten years. Because they know what the invention is because they read the specification. Which is how... And what I'm thinking through out loud is how much does Gordon do to really represent and reflect what was clearly obtained by the inventor when there is, in my mind, a mistake in the prosecution which would have got caught. Sure. And, by the way, what we say in our bravery pages, 26 and 27, is that even if you view it as a mistake, it comes to the same claim scope by correcting that mistake, although that's not what we're seeking. We did point out in our briefs what the key parts of the prosecution history were. For example, what I read when they amended Claim 11. Also, we point out Figure 6, which I think makes this abundantly clear. So our argument is... Well, I think you're about to run... Go ahead. I'm sorry. I was simply going to say that I think that what the court should do, what we asked the court to do, is exactly what we presumed that the other side did in 2003 when they were trying to design around this, which is look at the claim and look at the specification as one of ordinary, still-in-the-art Phillips, Markman, Vitronics is expected to do. Read the claim in light of the specification. And then also, again, as Phillips instructs, look at the prosecution history, which makes it very clear what the inventor intended as he was amending this claim, even though the wording came out very poorly. Okay, we're running out of time, and I've got to get to this real quick. I'm sorry. I took out you all. But they say that it's not so clear from the spec and the prosecution history, and they focus in on the plurality of supports. So if you wouldn't mind, since that seems to be a critical juncture in this case, addressing and focusing on that, and in particular telling me why their argument that there aren't multiple reasonable constructions is wrong. Tell me what's wrong with their proposed construction which would result in a different scope than your proposed construction. Sure. And the other thing I can do is with my rebuttal time, if I'm allowed to have some, is I can respond to what they're going to go through as those. I mean, I'm happy to do that now, but I'm sure they're going to go through that, and I can respond. Take some time to consider this question. Well, first of all, their exhibit that they're going to show you has five constructions on it. The first, they propose deleting other than the. And so it says that the second support is being oriented in known positions relative to the home position. That is exactly what the claim talks about because it talks about the first identifier condition comprising, and then that includes a first support. So that's the home position. We also know from column five of the specification on line 28 to 30 that the home position is actually two boards, so that comprising allows for a second board in the home position, which is in figure six, number 73. You can see it's shaded there. There are two boards filled in. That's to start the encoding. It needs that to create the magnetic effect. Then as you have the other positions relative to the home position, that's covered really. The first three of their constructions all say, with different words, the same thing. You have the home position, and then you have all the other positions with reference to the home position. So their second construction, for example, the supports other than the first support being oriented in known positions relative to the home position, that is, they're talking about the second supports, which are all the additional supports, 75 through 81. Again, that's exactly what we've said. There are known positions around the circumference. No, but counsel, in the claim, it says comprising the first support and a plurality of second supports. That clearly gives the idea that there could be a third or a fourth set of supports. Otherwise, you wouldn't use the word comprising. You agree, right? If someone came along with a third or fourth support, you wouldn't say, oh, suddenly those can't possibly infringe our claim. If somebody came in and said, gosh, we're gonna call the fourth sector the third supports, that doesn't, we would agree. That all is within the scope of what the applicant said, for example, to the PTL, additional supports, all the rest of the way around the wheel. So it's not so critical that you call those second, third, fourth supports. What it is is that there's the home position, there's everything else with reference to the home position, and at least, as you can see in 77B and 79B, there's at least one other pin to complete the encoding in the magnetic effect. So these wordings, and I would add that they're number four and number five. Number five, for example, is just... How in the world did you add this first and second language into this claim? It's nowhere in the spec, and all it did is make a mess. I agree. I think it makes a mess. I, you know, it would be a lot easier if we had just gotten a check, if, you know, we filed a lawsuit, we got a check, and no one went home. But as we know, that's really how it works. But we believe that the inventor who had a legitimate invention here, he shouldn't be deprived of the value of an invention because of this awkward wording. So if I may, I'd like to reserve whatever time I can get for rebuttal. All right. So I'm assuming... We do apologize for the time, as well, that we were running over. Let's add five minutes. We're going to have three minutes for rebuttal. Thank you, Your Honor. As we warned you, I'm going to show boards here. Last one. Thank you, Your Honor. If you may, please, the court. If you wouldn't mind going right to the heart of my very last question. Yes. I hope that's not too inconvenient. But Fargo asserts that no matter how we would correct this claim, it always leads to a reasonable construction that the opposite of lawyers not in the home position are all at predetermined points with reference to the home position. And that's something that you take issue with, and I want you to explain to me why. Well, there's a couple of reasons why. First of all, let's keep in mind that in the Novo case and the cases of Fargo, none of those cases have asked the question of whether the multiple possible corrections have a different claim scope. That's not the issue under Novo in the cases that follow. All Novo has looked to is, are there more than one reasonable way to correct an error in claim language, if so, is it? Come on. None of the cases say it doesn't devolve into a determination of whether those corrections would result in a different claim scope. There's multiple ways to skin a cat. The cat's still dead in the end, but you've got to skin it. So, I mean, I think clearly Novo was getting at, in our precedents, the notion that you want to determine if there's reasonable debate, because the only reason that people care about the words of the claimer is to determine the scope. It affects the scope, and that's certainly reasonable. So let me get to the heart of why these possible corrections have different scope. That's the issue at the end of the day. Now, I do have the five possible corrections here, and in fact, all of those result in different scope. Start with the first one. When we use Figure 6, can you see Figure 6? Hopefully not. Here's a home position that they talk about, you know, for a body. And as they point out, for a body, there are two panels. The claim only requires one support with one magnetic material. So the claim requires you have it in here. This first correction would then require two second supports. The claim says plurality of second supports that are oriented in all positions relative to the home position. So it would require two pins somewhere out here. It could be two, could be four, could be a hundred, but at least two out here. But to compare them, for example, this one, it kind of goes to your point. Suppose you just arbitrarily put a hole right there. You can see that. I'll put it up there. On this claim interpretation, that language would still be met because this doesn't have to be called a second support. This would just be a random support, you know, put there for no apparent reason or perhaps to avoid claim language. But it would still be covered by that. If we go down to possible correction number three, it requires essentially that all supports other than the ones in the home position have to be oriented in all positions relative to the home position. So an arbitrarily placed hole right there would avoid that claim language. But why do we have to arbitrarily designate the name of those things as something other than second supports? Why isn't the specification clear that, look, everything other than the one in the home position is relative to the home position? Why don't they all get lumped in the same? That's a very interesting point, Your Honor, because if you look at the specification, one of the things you see is that some of these supports are never filled with holes. The specification makes clear that the trailing support in each sector, the Ds, can never be filled with pins. And the bottom line is if you're never going to fill that hole with a pin, why does it have to be located at that very exact oriented at the dome position? You can move these wherever you want. Just out of curiosity, why do you have them at all then? I agree, Your Honor. It's difficult to tell from the specification why they ask for holes that are never filled. The best answer I think I can give is the spec mentions it a couple of times that this also serves a visual identification purpose. That by having sort of a uniform collection of holes all the way around, it's easier for somebody to look and see, okay, I know this is a type of whatever because I can see a pin here and a pin there. But it's really not my job to explain why the specification has this sort of odd, we have holes that are never used, but certainly that's what it says. So there certainly isn't unreasonable suggestion that you might put a hole right there that would have no purpose. You cover under this direction and not under this. These others, though, become even more different because you jump back up to the second one. Again, this is one that... So I assume you're saying that those holes in the middle are not oriented in known positions relative to the... Right, just arbitrarily placed wherever, you know, frankly serving no purpose. Now, and that reminds me, let me address one of the points they make in the brief, which is that, well, if we had it just arbitrarily placed here and put a pin there, it would throw off the way this machine would work. Of course, there's no evidence to support that, and it seems unlikely, but it leads you back to the point I made before, which is that we're talking about holes, and a hole's not going to throw the machine off. It's only, maybe, if you put a pin there, and that talks about the possibility of holes that are never filled. Now, so let me then go back to this second one. The interesting thing about this, again, this is one that was proposed by Fargo in the district court. Counsel may be correct. They did not call this a correction. They consistently called it a construction, but I think we're beyond that, because that's the whole point, is when you have erroneous plain language, you're not any longer construing plain language. You're correcting it. Where is this in our... Do we have these... This is the same numbering system that is used in our brief. Is it in the... In the red brief. No, it's in the red brief, and what you will see is they are single-spaced, indented, and numbered, but they're spaced on different pages. So you have this page through probably five pages of a brief to get through one, two, three, four, and we actually have sort of three variations, five A through five C. Now, this... So this second one, the interesting thing about this one is that it basically says the supports other than the first support singular being oriented in all positions. That means, at the end of the day, that you can only have one support in the whole position, because it tells you all other supports are oriented relative to the home position. So that correction would preclude the possibility of a second support in the home position. As I expected, counsel would be quick to point out that would mean this claim wouldn't even cover the preferred embodiment, and certainly case law of this Court says that a construction that excludes the preferred embodiment is rarely, if ever, correct, but it doesn't say it's never possible, and let's keep in mind this is a correction that they proposed. The fourth one here is one that the District Court specifically relied on in its decision, and it's basically an effort to describe what could be a category of second support that might not want to be oriented at an all position relative to the home position, and this one basically acknowledges the possibility that the second support here in the home position could be called a second support. You could have a second support in the home position. I believe, Your Honor, that all of them are consistent with the specification. Okay. It says you look to the specification to see what the invention is, to construe the claims. We say in Phillips that is the first primary source of knowledge in understanding what the invention is. That goes to the fundamental question of what is the difference between claim construction and claim correction. No, it comes to what understanding, in fact, what the patent is about and where the resolution of these differences or points of dispute that are raised, how they should be resolved. What this Court's precedent says, though, is that at the end of the day, claim construction is about construing the actual words of the claim. It's really not about trying to figure out the answer. You don't have to look too much at great lengths, in fact, to say, no, you must look at the claims. In light of the invention, it's described in the specification. We never say that it's removed from relationships to the specification that it's part of. We always need to look to the specification, but what we look to the specification to do is to figure out what the claimed invention means. We always have to go back to the claimed invention. And so in this instance, we're going back and trying to figure out what the claimed, which is this nonsensical... That's why I asked where the specification supports. The alternatives that you tell us are perfectly viable. The specification would be perfectly consistent and would support this construction because it would enable a situation where all of the second supports, and there would have to be at least two of them, would be oriented in all positions. The specification is consistent with that because it shows multiple second supports oriented in all positions rather than the whole position. And it would support a construction where if somebody arbitrarily placed a hole here, it would still be covered by the claims. That is, the specification would support a claim that wouldn't want to be avoided simply because there was a hole placed there. But the specification... Which of your five are you suggesting? This one would still cover the claim even if you had arbitrary holes. And I believe this one, frankly, would too. And it would just not allow a second one in the whole position. This one would not. This one would mean that every support outside the whole position has to be oriented in all positions. So if you had a hole here, it would be outside the claim. It's still consistent with the specification, but it would be outside the scope of the claims. This one... Let me think about this for a minute. Number one, adjacent. Would still allow there to be second supports. You know, you could still place one there, and you could say it's a third support or fourth support. It doesn't have to be a second support. And I think the same would then be true of the last one. So that's kind of the difference between this one and all the others. Now, Judge Newman, I'm not sure I fully answered your question yet. Well, I've been trying to understand. I mean, I have no trouble with the concept that this claim is seriously flawed. The question is, it also seems to me that it's very clear when you read the specification what is covered by the claim. Nonetheless, the claim is flawed on its face. And if you don't read the specification, I do not understand it. However, somewhere there needs to be a little bit of tolerance as to how much is hard to say, and it would have to be on a case-by-case. And so I'm really trying to understand, in this case, how much toleration is, to be fair, to be fair on both sides, is required. And that's why, rather than take an extreme position, and some of those are more extreme than others, and say, well, you could stretch it to cover this, really just to try and understand how it should be resolved. I think the best answer I can give to that is that it's clear in this case that they weren't trying with the claims to just claim exactly what was inferred by them. As most patentees do, they were trying to claim, cover more with their claims than specifically what they disclosed. So going to the specification, really, at the end of the day, only tells us, well, what exactly was their preferred embodiment? It's not that much... Speck didn't even talk about first or second support. Right. That's what made it difficult for me in ascertaining exactly what they were talking about. But doesn't... What you're saying is Speck also doesn't necessarily lead us to the conclusion that all the holds, other than the ones in the home position, have to be relative to the home position. That's the one difficulty I'm having with your position. You want to stick these random holes in the middle and everything. It seems to me that, well, the specification might allow for that. The specification doesn't support the notion that that is the invention here. But maybe that's the key point, is that it allows it. And a reasonable patent drafter, if they were trying to draft a claim that could not be easily avoided, certainly they wanted to cover what they believed their invention was, but it's reasonable to believe they were trying to draft this claim so that it could be easily avoided by somebody putting a random hole in it. So it's reasonable to assume the claim was drafted to not require all supports to be located, oriented, at known positions relative to the home positions. The other point on that, though, Your Honor, is these claim interpretations that leave open the possibility that it's the second support that provides the second pin for the home position. That clearly is the preferred environment, is to have two pins in the home position. Again, this correction has nothing to do with arbitrarily placing pins here or here. This is one that provides for the opportunity to have a second support in the... another support that is a second support in the home position. And the interesting thing about that, Your Honor, is this correction, since the claim requires a plurality of second supports, if this one here is a second support, then the claim would only require one more hole outside the home position. So this correction would read on a three-hole environment. One, two, three. Your interpretation seems a little contorted to me. It doesn't seem to bring natural or even reasonable. It seems to me, when they say the first support, couldn't that encapsulate both of those two pins in the home position? In fact, shouldn't it? In fact, isn't that what would be generally consistent with Figure 6 and all of the disclosure and all of the discussion of the spec? It doesn't seem to me that your proposed construction is at all even reasonable in light of the spec, and that's where you're losing me here. The word support, I think, throughout this case, has been recognized as being a single hole. I don't think they've ever suggested that a support could be multiple holes. And in fact, if you go to, if Your Honor has noticed, but we did end up briefing this issue basically concurrently with claim construction. We argued it together with claim construction, and the judge ruled in the same order. If you go to the judge's claim construction on the word support, the judge agreed with Fargo's position that support is a hole. So I don't think they can take the position that when it says a first support, that really means two holes. There has to be a second support that provides the second hole for the second pin. Again, assuming that this claim is even limited to having to have two pins in the home position. It was pretty clearly drafted to not require that. And one of the points I want to make, and back up, Your Honors, to the patent in column 2. One of the things Fargo says is this patent never envisions the possibility of an embodiment that doesn't have two pins in the home position. I'm at column 2 at line 41. When talking about the number of pins, it talks about the possibility of instead using binary codes to describe the invention. Now, it's a little difficult to infer what exactly they mean by that. But I think one reasonable way to look at that is you could just say, look, what is it? I think I'm not at the right place. Are you telling me column 2, line 41? Yes, it says, while binary codes could be used, more magnets are required. In other words, the patent is describing, it's preferred environment is to have two pins in the home position, and then these sectors that just basically require one other pin somewhere. And so by that, they minimize the number of pins. But they say, alternatively, we could use a binary code, although more magnets would be required. But that doesn't seem to me to be disclaiming the way your initial introduction to this argument suggested. You suggested to me that this language almost disclaims something more. It's exactly the opposite, Your Honor. It's interesting that usually it's the patentee coming in and arguing my invention is very broad, and then the accused infringer comes in and says, no, it's very narrow. It's kind of flipped here, where now Fargo's coming in in an effort to save their patent and saying, oh, this claim's really very narrow. You read it in view of our spec, and it's clear that we have to have two pins in the home position. But you better explain to me again what we think this sentence means. This sentence at least envisions a broader embodiment that doesn't require two pins in the home position. Because you could create a binary code of pins that would not be dependent on defining a home position. No, it says you need more magnets. True. It's not preferred. It's clearly not a preferred embodiment. But I'm not trying to argue disclaimer. I'm making the point that they envisioned, as within the scope of their invention, an embodiment that didn't require two pins in the home position. Well, you're right. All of this is so turned upside down, because we've got a patentee, or we've written the error words, and we've written the code. It is an odd scenario, but at the end of the day, I think we need to keep in mind the sort of fundamental distinction between claim interpretation and claim correction. What Novo says, and the cases that have followed it, is once we have an error in a claim, the issue is no longer do we look to the specification and the prosecution history and try our hardest to find the most likely possibility. That's claim construction. And so if that were the view, we'd look for the one here that we think is the most likely, and we'd say, as long as we can find one of those, that's the end of it, and we go home. And we say the claim's not indefinite. But once there's an error in the claim, what Novo says is you flip all that around, and you say, look, the question is whether the correction is subject to reasonable debate. And so even if there's one here we think is more likely than all the others, as long as there's at least two that are reasonable possibilities, then we have reasonable debate. In light of the plain language and the spec. And the spec. I'm not disputing the spec. But every one of these is consistent with the specification. So they may be more likely to do the specification, but they are all consistent with the specification. They are, therefore, all reasonable and under Novo and the cases that followed it. Did this report correctly found claims age of 15 and up? Thank you, Mr. Chairman. Thank you. Your Honor, I believe that this counsel's argument shows exactly what the problem is with starting backwards with Novo and saying we've got a mistake, rather than starting going forward with claim construction. But I want to address a couple specific points. First of all, we have to remember this pack is about encoding, using magnets to create a code, because there are many different printer ribbons. So you have to have a series of magnets that a microprocessor can read the Hall effect, the magnetic effect, to come up with the code that tells you what ribbon you have. That's why all of these holes, or some number of known holes, matter. And that's what's referred to in column two. Binary is a form of encoding, which doesn't change the fact in column five that you determine where the code is and what it is by starting with the home position with two magnets right here. And then from there, you read what could be a form of binary code. However, it's encoded. But these holes are used to encode a number of different options for printer ribbons. Now, I also want to point to in column five. What does the specification indicate to us is the clear invention that Juro was trying to cover? Exactly what I'm going to say in column five. It says, starting at line 28, as the first part of the claim deals with, you have an identifier addition in the claim. Column five at line 28 talks about what's described as the first identifier addition in the claim, which is two holes. It's called the home position at column five, 28 to 30. Those two pins are always filled with, or those two holes are always filled with pins. It says that very clearly. There's no dispute about that. It's the only way to do this. This whole specification talks about the encoding, the Hall effect, which starts with those two pins filled in in the home position. Then I'm going to take you further down that column to. Wait, but doesn't your claim only talk about one pin in the home position? Well, it's. I mean, do you make sure I'm not misunderstanding. But I thought that they suggested that your proposed construction, and I want to talk about this report, was that a support is always a single pin. And so when it says a first support in the home position of the claim, wouldn't that imply your claim is much broader than one limited to two holes in the home position? Not the way. First of all, you can throw this out, because these are just their made up versions of our construction turned into corrections. To get to your question, Judge Moore, what the claim says is that there's a first identifier addition comprising an un-magnetized magnetic material in a first support. So that's this, the home position, comprising which is open language. At least this one pin, the first support, is identified. But it's open language comprising. And then it goes on, as described in column five, down at 38 to 43. It talks about how all of these additional holes are in known positions, so that you can do the encoding. And it specifically talks about, contrary to what counsel said, the trailing positions that are open. I'm looking at line 49 and 50, and 54 and 55. That's part of the code, that you leave some of these holes open. So that when the hall effect sensor is reading this, it goes around. There are known spots that are open. And it has to be in known spots, so that you can read the code. For example, if you had a binary code, which means 010101, there are all kinds of historic ways known for encoding something in binary. And you have to have a system, like we have here, to read the code and decipher it. And that includes leaving some of these holes open to make the codes. So these things, some of their constructions completely defy the invention. This is number five. It makes no sense. We're going to drill holes and put magnets in completely different places. The invention would never work. I mean, they're just making things up for purposes of getting out of liability. That'd make no sense. Thank you, Your Honor. All rise. The honorable court is adjourned from day to day. What? There you go. Thank you.